307 F.2d 829
 Glen RUNGE, Individually and as Next Friend for Follin
Runge, a Minor, Appellants,
v.
W. S. WELCH, Individually and d/b/a Welch Trucking Company
and Louis DeeWhorton, Appellees.
 No. 19459.
 United States Court of Appeals Fifth Circuit.
 Sept. 18, 1962, Rehearing Denied Oct. 11, 1962.
 
 John J. Watts, Odessa, Tex., for appellants.
 W. O. Shafer, McDonald, Shafer, Gilliland & Davis, Odessa, Tex., for appellees.
 Before TUTTLE, Chief Judge, and RIVES and BROWN, Circuit Judges.
 RIVES, Circuit Judge.
 
 
 1
 This is a common-law action brought by a father individually and as next friend of his minor son to recover damages for personal injuries sustained by the minor.
 
 
 2
 Some of the facts are not in dispute. The father and son were guests or passengers in the back seat of an automobile driven by one Williams. The automobile was following some distance behind a tank truck driven by the defendant Whorton as employee of the defendant Welch. A union or pipe connection, made of two inch pipe connection, made of two on the other and the whole being some ten or eleven inches long, was arried in an open metal tray three inches deep located behind the truck cab and partly under the cargo tank. The union or pipe connection fell or was jolted out of the metal tray onto the highway. There is came in contact with the underside of the automobile driven by Williams. According to Williams' testimony.
 
 
 3
 'Q. What did it do to the bottom of your car?
 
 
 4
 'A. Well, sir, it tore the front A-frame up, and it knocked the floorboards, it knocked them up, and it knocked the back floorboard up approximately five or six inches (indicating), and it went on back and it tore the muffler off, and the gas tank, and all. It went-- well, the small piece of the object that fell was a two-inch because it just made a two-inch hole right in the bottom of ny gas tank.'
 
 
 5
 At the time of the accident no injury to the minor son was apparent. According to the father, the son complained of a knot on his head two or three hours later. There was evidence for the jury's consideration that severe mental and physical injuries then ensued.
 
 
 6
 The plaintiff's and the defendants' versions of how the collision occurred between the union or pipe connection and Williams' car are widely different. According to Williams, he had just pulled up to a distance of 75 to 100 feet behind the truck and was waiting for an approaching vehicle to get by before passing the truck.
 
 
 7
 'Q. Mr. Williams, what was the first thing that you noticed concerning this swedge that fell?
 
 
 8
 'A. Well, it was just-- it was coming right down when I seen it, it was coming off behind the truck there and it was coming down towards me, and I didn't have a chance to completely stop before I hit it, and I was waiting, I couldn't go ahead and pass the truck because there was another vehicle coming up there, and I was going too fast I didn't want to take a chance on pulling off the side of the road and hitting that sand, afraid of turning me over, there was nothing I could do but try to straddle it, it was right in front of me, I couldn't hardly miss, well, I didn't miss it.'
 
 
 9
 According to the truck driver, Whorton, a yellow Buick in which some 'roughnecks' were riding had been following about a quarter of a mile behind his truck for some eight miles, and 'these roughnecks in this yellow Buick pulled up beside me and told me I lost something.' Whorton turned around and came back. After traveling about a mile, he observed the Williams car 'just pulling off the road.'
 
 
 10
 'Q. What did you do then, after you saw them pull off there on the side of the road?
 
 
 11
 'A. Well, sir, I went on by them and turned around and stopped, and picked up the union, and pulled up there beside the car, behind the car, and this gentleman here (indicating) come to me up there and said I had knocked a hole in his gas tank.
 
 
 12
 'Q. All right. And what else was said, if any thing, or what else happened?
 
 
 13
 'A. Well, sir, I asked him was anyone hurt or anything I could do, and he just turned around and walked off.
 
 
 14
 'Q. Did he appear to be happy, or angry, or mad, or what was the situation?
 
 
 15
 'A. Well, sir, he was pretty mad.
 
 
 16
 'Q. You figured you were better off to go down the road?
 
 
 17
 'A. Yes, sir.'
 
 
 18
 After a full trial, the jury returned a verdict for the defendants, and judgment was entered thereon. All of the grounds relied on for reversal relate to the court's charge to the jury. In most of the charges given for the defendants and in one refused to the plaintiff, we find no error. The following instruction, however, appears to us erroneous and so prejudicial as to require a reversal:
 
 
 19
 'You are instructed that if you find and believe from a preponderance of the evidence that Henry Williams was following the truck too Closely on the occasion in question, and if you further find and believe from a preponderance of the evidence that such following too closely, if any, was the sole proximate cause of the accident in question, then in that event your verdict will be for the defendants.'
 
 
 20
 To that charge plaintiff's counsel objected as follows:
 
 
 21
 'We further respectfully except to the charge of the Court and to the giving of the instruction on following too closely because the uncontradicted evidence-- they claim that he was a mile back, their truck driver, by which they are bound, they are bound by that testimony, and two miles back, there couldn't have been any issue of following too closely, but even under our testimony, he gradually approached, under all the testimony, he was getting ready to pass him but couldn't pass him because of the presence of the other car. Now, to say that you can't get within seventy-five or a hundred feet of a car and have an accident happen because they let something fall off their truck, an entirely unheard of and unforeseen thing, is to create a very dangerous doctrine in Texas and one that I do not believe sincerely is sustained by any of the decisions of the courts.'
 
 
 22
 The court overruled this objection.
 
 
 23
 We agree with the plaintiff that the evidence presented no issue of following too closely. There was no evidence or indication that the collision occurred in any manner other than one of the two conflicting versions. The Williams' automobile was not following too close according to either version. Certainly it was not too close if it was a mile or more behind the truck when the union or pipe fitting fell out. Nor was it too close if it had just pulled up to 75 or 100 feet behind the truck preparatory to passing. There was no evidence of any such excessive speed or of traffic upon or condition of the highway, or other circumstances, from which the jury could reasonably infer that under either verdion the Williams' automobile was following the truck too closely.
 
 
 24
 Any negligence on the part of Williams could not be imputed to the father and son riding as guestion or passengers on the back seat. For his conduct in 'following the truck too closely' to be a defense it must have been conduct which the defendants could not reasonably have foreseen, that is it must have been negligent, and, further, it must have been such negligence as constituted the sole proximate cause of the collision. There was no evidence from which the Williams was negligent in 'following the Williams was negligent in 'following the truck too closely,' or that his doing so constituted the sole proximate cause of the collision.
 
 
 25
 There was, of course, no duty on Williams' part to anticipate that the union or pipe fitting, or any other foreign object, would fall or be thrown from the truck, and to follow at such distance as to be able to avoid any such object. Yet, without any explanation of what was meant by 'following the truck too closely,' the existence of some such duty could naturally be found by the jury from the court's charge. That is all the more true when we consider Williams' testimony on cross-examination:
 
 
 26
 'Q. But you were following there so close that you couldn't avoid hitting that object?
 
 
 27
 'A. Yes, sir, I couldn't avoid the object, I mean it was either hit the car or hit the sand out there and taking a chance on turning over, or try to straddle it, sir. I figure I-- '
 
 
 28
 The jury could not reasonably infer from the collision itself that Williams was following the truck too closely. We can discover no other evidence to justify such a finding.
 
 
 29
 We cannot say that the general verdict for the defendants was not brought about by this erroneous instruction. The judgment is therefore reversed and the cause remanded.
 
 
 30
 Reversed and remanded.